UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAFEAL LAWSHEA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-470-ZMB |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on three overlapping motions to dismiss. Docs. 5, 7, 23. Due to various pleading deficiencies, the Court dismisses all claims except Plaintiff Lafeal Lawshea's failure-to-investigate count against Defendants Ernest Church and Tonya Porter.

## BACKGROUND

### I.  Factual Background[1]

This case stems from a series of sexual relationships Lawshea had with colleagues at the Saint Louis Metropolitan Police Department (SLMPD). Doc. 3 ¶¶ 14, 41, 49. Over the course of a decade, Lawshea was romantically involved with Defendants Junora Moore, Tiffany Liles, and Shawnetress Wallace, and he frequently socialized with Defendant Sarah Mesnage. *Id.* ¶¶ 15, 28–29, 39, 42, 54–55. In March 2020, after their relationship had ended, Moore filed a report with the SLMPD's Internal Affairs Division (IAD), alleging that Lawshea and another officer drugged and raped her in 2010. *Id.* ¶¶ 29, 32. IAD investigators Church and Porter ("IAD Defendants") interviewed Moore—followed by Mesnage, Wallace, and Liles—and all four women ("Reporting Defendants") accused Lawshea of raping them. *Id.* ¶¶ 34, 47–48, 62–63.

---

[1] The Court accepts as true the following well-pled facts for the purpose of this motion. *See infra* at 2–3.

The IAD Defendants later prepared an incident report and forwarded it to the St. Louis City Circuit Attorney's Office. *Id.* ¶ 85. They did so despite knowing of inconsistencies in the witnesses' stories, failing to interview certain witnesses, and excluding other evidence from the report out of a desire to "make an example" out of police officers as opposed to conducting a fair investigation. *Id.* ¶¶ 36–37, 47, 64, 69, 74, 83–84. Based on the report, the Circuit Attorney's Office filed charges against Lawshea. *Id.* ¶ 87. He was arrested, confined for 3 months, and then put on house arrest for 7 months. *Id.* ¶ 89. Lawshea ultimately was acquitted at trial in February 2023. *Id.* ¶¶ 91–92.

## II.     Procedural Background

In February 2025, Lawshea filed this action in state court, asserting five claims: state-law malicious prosecution, three civil-rights claims under 42 U.S.C. § 1983, and indemnification.[2] Doc. 1-4. Shortly after removal, *see* Doc. 1, the majority of the Defendants moved to dismiss, Doc 5. Liles, a self-represented party, filed her own motion to dismiss that incorporated many of the same arguments. Doc. 7. Finally, Wallace timely moved to dismiss after she was served months later. Doc. 23. Lawshea opposed each of the motions, Docs. 9, 11, 27, and all three are now ripe for adjudication. Docs. 10, 28; *see* E.D. MO. L.R. 4.01(c) (providing deadline for replies).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

[2] Lawshea's common-law malicious-prosecution claim and section 1983 claims are against some or all of the individual Defendants in their individual capacities, while the indemnification claim is against only the City. Doc. 3.

2

(quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

### DISCUSSION

Defendants are correct that Lawshea fails to state a claim on most, but not all, counts. First, Lawshea falls short of pleading state-law malicious prosecution against the Reporting Defendants because his own allegations indicate that the IAD Defendants independently recommended prosecution. Next, of all the section 1983 claims, only the failure-to-investigate count survives because the Reporting Defendants were not acting under color of law in making their reports; Lawshea's acquittal precludes a due-process claim as to exculpatory evidence; and qualified immunity bars his malicious-prosecution claim. Finally, Lawshea's indemnification claim fails, as he effectively asks this Court to render an advisory opinion.

3

## I.   State-Law Malicious Prosecution (Count I)

Lawshea first asserts a malicious-prosecution claim against the Reporting Defendants. Under Missouri law, Lawshea must prove:

> (1) the commencement or prosecution of the proceedings against the present plaintiff; (2) its legal causation or instigation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage by reason thereof.

*Vescovo v. Kingsland*, 628 S.W.3d 645, 654 (Mo. Ct. App. 2020) (citation omitted). Missouri courts have emphasized that, because "actions for malicious prosecution are disfavored . . . , strict and clear proof of all elements is required." *Id.* (quotation omitted). Moore and Mesnage contend that Lawshea has failed to show a lack of probable cause for his prosecution, Doc. 6 at 10–11, while Liles and Wallace suggest they were not responsible for instigating the proceeding,[3] Doc. 8 at 4; Doc. 24 at 8–9. The Court addresses these arguments in turn.

In Missouri, "probable cause to prosecute is reasonable cause and may be defined as the existence of such a state of facts as would warrant an ordinarily cautious and prudent person in the belief that the accused was guilty of the offense charged." *Daniels v. Terranova*, 611 S.W.3d 799, 814 (Mo. Ct. App. 2020). Further, "if a charge is initiated by indictment by a grand jury or by a prosecuting attorney on his sworn information and belief, either amounts to a prima facie showing that probable cause did exist for the prosecution." *Perry v. Dayton Hudson Corp.*, 789 S.W.2d 837, 841 (Mo. Ct. App. 1990). That showing is "conclusive unless rebutted by evidence that false testimony was the basis of the charge and the falsity was discoverable upon reasonable investigation." *Id.*; *see also Hazlett v. City of Pine Lawn*, No. 4:12-CV-1715-JAR, 2013 WL

---

[3] While Liles frames her argument in terms of "probable cause," the actual—albeit sparse—point she makes is that Lawshea failed to plead that she instigated the investigation. Doc. 8 at 4 ("*Liles did not pursue prosecution* or participate in the legal proceedings or criminal trial against [Lawshea].") (emphasis added).

4482864, at *5 (E.D. Mo. Aug. 19, 2013) (same). Here, Lawshea has sufficiently alleged that false testimony formed the basis of the charges against him and that Church and Porter knew the allegations were false when they referred the report to the Circuit Attorney's Office. Doc 3. ¶¶ 32, 44–48, 64, 81–82.

Nonetheless, this claim fails because the Reporting Defendants did not "instigate" the actions against Lawshea. "Instigation requires that there be some affirmative action by way of encouragement, advice, pressure, or the like in the institution of the prosecution." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 115 (Mo. Ct. App. 2008) (citation omitted). And while liability may rise "from supplying false information to the prosecuting official," it cannot attach where an intervening authority independently reviews the information and makes the decision to prosecute. *Id.* (citation omitted).

Here, the Reporting Defendants allegedly provided false information to the IAD Defendants. Doc 3. ¶¶ 36–37, 47–48, 64, 74. But they can be liable only if "intelligent exercise of the [prosecuting] officer's discretion [was] impossible[.]" *Ladeas v. Carter*, 845 S.W.2d 45, 51 (Mo. Ct. App. 1992). Significantly, Lawshea himself claims that the IAD Defendants *knew* the accusations against him were false, or at least founded on contradictory and disprovable evidence. Doc. 3 ¶ 82. Thus, at least as to the Reporting Defendants, the claim fails because the IAD Defendants' pursuit of charges breaks the necessary chain of liability. *See Crow*, 259 S.W.3d at 115 (holding defendants did not instigate a prosecution where their report triggered an investigation, where a director made an independent determination to refer the matter to the Missouri Attorney General's office). Accordingly, Lawshea has failed to state a claim against them for malicious prosecution under Missouri law.

5

**II.     Section 1983 Claims (Counts II-IV)**

Lawshea next asserts a bevy of constitutional violations, including (1) suppression of exculpatory evidence in violation of his Sixth and Fourteenth Amendment rights by all individual Defendants, Doc. 3 ¶¶ 109–118; (2) reckless failure to investigate in violation of his Fourteenth Amendment rights by the IAD Defendants, *id.* ¶¶ 119–126; and (3) malicious prosecution in violation of his Fourth, Sixth, and Fourteenth Amendment rights by the Reporting Defendants, *id.* ¶¶ 127–136. Before explaining why the bulk of these claims fail, the Court will first address the threshold question of whether the Reporting Defendants acting under color of law in reporting their rape accusations.

### a.  Action Under Color of Law

The Reporting Defendants contend that they were not acting under color of law and that the Petition fails to adequately plead that any of their actions were made possible by, or undertaken in, their official positions. Doc. 6 at 5; Doc. 8 at 3; Doc. 24 at 4–6. They are correct. Lawshea fails to allege that Message was an officer at the time that she spoke to IAD. Doc. 3 ¶ 47. The only relevant fact he alleges is that she became an SLMPD officer after graduating from the academy, about a decade before her rape accusation. *Id.* ¶ 41. Similarly, there are no allegations that Wallace or Liles were SLMPD Officers at the time they accused him. Indeed, the allegations in the Petition specify that Liles had already moved out of St. Louis at the time she was contacted by the IAD Defendants. *See* Doc. 3 ¶¶ 62–63. As such, Moore is the only possible remaining state actor among the Reporting Defendants.

The Eighth Circuit's color-of-law test is "rooted in authority." *Yassin v. Weyker*, 39 F.4th 1086, 1090 (8th Cir. 2022) (citation omitted). Specifically, a defendant must act pursuant to a power that is "possessed by virtue of state law and made possible only because the wrongdoer is

clothed with [state] authority." *Id.* In making this determination, courts must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014). "Factors include: whether the officer is on duty and in uniform, the motivation behind the officer's actions, whether the officer had access to the victim because of his position, and whether the officer threatened official conduct in the future." *Id.*

Here, all four factors are either neutral or cut against Lawshea. He failed to allege any facts supporting the first and fourth factors, even though he would be aware of any threats against him and could have pled their duty status on information and belief if he thought it applied. The second factor weighs strongly in favor of the Reporting Defendants given that Lawshea alleges personal motives for their false accusations against him. Doc. 3 ¶¶ 103–106. And despite Lawshea's arguments, the third factor also appears to weigh against him. The Petition does not support his contention that the Reporting Defendants "filed their complaints as members of the police department and not as civilian[s]." Doc. 9 at 1; *see also* Doc. 11 at 1–2; Doc. 27 at 1–2. And while Lawshea did allege that IAD handled the investigation "because the allegations involved SLMPD officers," Doc. 3 ¶ 66, the most commonsense reading of that claim is that IAD's involvement was triggered because an officer was named as the *perpetrator*, not because they were the victims. Indeed, if an SLMPD officer was assaulted by a non-officer, the crime almost certainly would have been investigated by the Sex Crimes Division. *See* Doc. 3 ¶ 65. As such, given that he has failed to show that any of the factors fall in his favor, Lawshea fails to state a claim that Moore—or any of the other Reporting Defendants—was a state actor.

7

### b. *Suppression of Exculpatory Evidence (Count II)*

Lawshea's next claim is that the individual Defendants suppressed exculpatory evidence in violation of his due process rights at trial. However, there can be no claim for suppression of exculpatory evidence if the accused was acquitted. *Simpson v. City of Little Rock*, 694 F. App'x 468, 469 (8th Cir. 2017) (citing *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012)). Because Lawshea was acquitted, Doc. 3 ¶ 92, his suppression claim fails.

### c. *Reckless or Intentional Failure to Investigate (Count III)*

Lawshea also asserts that the IAD Defendants violated his Fourteenth Amendment rights by recklessly or intentionally failing to investigate his accusers' claims. *Id.* ¶¶ 119–26. To prove this claim, Lawshea "must show that each individual defendant intentionally or recklessly failed to investigate, thereby shocking the conscience." *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018) (quotation omitted). Examples include "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, [and] (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence." *Carter v. Ludwick*, 139 F.4th 982, 992 (8th Cir. 2025) (citation omitted). But "[a]n officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct." *Id.*

This claim narrowly survives dismissal. Church and Porter argue that Lawshea failed to specifically allege that they were aware of evidence suggesting Lawshea's innocence. Doc. 6 at 9–10. But the Petition alleges that they admitted to not believing Moore's allegations, failed to include their doubts in their report, and further ignored contradictory evidence that cast serious doubt on Liles and Mesnage's claims. Doc. 3 ¶¶ 64, 74. At least at this early stage, Lawshea has sufficiently alleged that Church and Porter "purposefully ignored evidence that strongly tended to exonerate

8

[him] to support a claim for reckless investigation." *See Ferguson v. Short*, 2014 WL 3925512, at *3 (W.D. Mo. Aug. 12, 2014) (quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002)).

### d. Malicious Prosecution (Count IV)

Qualified immunity bars Lawshea's malicious-prosecution claim against Church, Porter, and Liles.[4] To assert a malicious-prosecution claim under section 1983—in reality, a claim for violation of his Fourth Amendment rights—Lawshea "must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024). The Eighth Circuit has noted that "[p]robable cause exists under the Fourth Amendment when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime." *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022) (quotation omitted). As detailed above, Lawshea has alleged multiple inconsistencies in the investigation that, taken as true and with all inferences drawn in his favor, would suffice to show a lack of probable cause.

However, Lawshea's malicious-prosecution claim against the IAD Defendants and Liles fails on qualified-immunity grounds because this type of claim was not established in the Eighth Circuit until several years after the alleged violations. An officer benefits from qualified immunity unless "(1) he violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable officer would know of the right at the time of the alleged violation." *Maser v. City of Coralville*, 139 F.4th 1004, 1009 (8th Cir. 2025). When conducting a qualified-immunity analysis, "because the focus is on whether the officer had fair notice that the conduct was unlawful,

---

[4] Likely given their argument that they were not state actors, Wallace, Moore, and Mesnage did not assert qualified immunity. *See* Doc. 6 at 11 (arguing that Lawshea's "Fourth Amendment malicious prosecution claims against Church and Porter are barred by the doctrine of qualified immunity" but omitting Mesnage and Moore); Doc. 24 (failing to raise the issue of qualified immunity). As such, the Court does not reach the question of whether they would have qualified immunity at this point.

reasonableness is judged against the backdrop of the law *at the time of the conduct.*" *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014) (citation omitted) (emphasis added). While "the defendant bears the burden of proof for this affirmative defense of qualified immunity, the plaintiff must demonstrate that the law was clearly established." *Id.* (citation omitted). Lawshea also failed to meet his burden to show that the right was clearly established at the time of the conduct, instead merely arguing that it was clearly established later. Doc. 9 at 6. And the Eighth Circuit has held that the Supreme Court recognized the right Lawshea asserts in 2022, *see Klein*, 44 F.4th at 1115, two years after the actions took place.[5] Accordingly, the Court grants qualified immunity to Liles, Church, and Porter as to the section 1983 malicious-prosecution claim.

### III.    State-Law Indemnification (Count V)

Lastly, Lawshea asserts a freestanding "Indemnification" claim against the City. Doc. 3 ¶¶ 137–39. While unclear on the face of the Petition, Lawshea appears to be asking this Court to determine whether the City would be required to indemnify the individual Defendants if a judgment was obtained against them at trial. Doc. 9 at 6–7. However, as the City correctly points out, Lawshea claim is not ripe, to the extent that it exists at all. Doc. 6 at 12–13. Lawshea has not obtained a judgment in this case, much less one that is uncollectable as a result of the City's refusal to indemnify its officers. As such, any ruling would be "advising what the law would be upon a hypothetical state of facts—a forbidden advisory opinion." *See J.M.O. v. United States*, 2021 WL 3856116, at *4 (D. Minn. Aug. 27, 2021) (citation omitted).

---

[5] The Court also notes that Liles did not explicitly raise a defense of qualified immunity, but she does note in her motion to dismiss that she "joins in with the City of St. Louis' Memorandum in Support of Defendants' Motion to Dismiss as it applies to Liles[.]" Doc. 7 at 2. Given the dual commands that "[p]ro se motions are [] to be construed liberally," *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 738 (8th Cir. 2008), and that Courts should resolve the issue of qualified immunity "at the earliest possible stage in litigation," the Court construes Liles's request as an assertion of qualified immunity, *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (citation omitted).

**CONCLUSION**

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' [5], [7], [23] motions to dismiss. The Court dismisses Counts I, II, IV, and V but denies the City of St. Louis's motion as to Count III.

So ordered this 24th day of March 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE